# **Exhibit A**

Case 1:24-cv-05239-DG-LKE Document 1-1 Filed 07/26/24 Page 2 of 33 PageID #: 6

SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| *FERMIN GERVACIO-ROSALES*, | ) Index Number _____ |
| Plaintiff, | ) |
| | ) *Summons* |
| *v.* | ) |
| | ) Date Index Number Purchased: <u>June 18, 2024</u> |
| *ALLY FINANCIAL INC.,* | ) |
| *CAPITAL ONE FINANCIAL CORPORATION,* | ) |
| *LEXISNEXIS RISK DATA MANAGEMENT INC.,* | ) |
| *NISSAN MOTOR ACCEPTANCE COMPANY L.L.C.,* | ) |
| *SYNCHRONY FINANCIAL,* | ) |
| *EQUIFAX INFORMATION SERVICES L.L.C.,* | ) |
| *EXPERIAN INFORMATION SOLUTIONS, INC.,* | ) |
| *and TRANSUNION INTERACTIVE, INC.,* | ) |
| Defendants. | ) |

To the above named Defendants:

Ally Financial Inc.
c/o Registered Agent C T Corporation Sys.
111 8th Street
New York, NY 10011

Capital One Financial Corporation
c/o Registered Agent Corp. Service Co.
100 Shockoe Slip Fl 2
Richmond, VA, 2321

Synchrony Financial
c/o registered agent Corp. Turst Co.
Corporation Trust Center
1209 Orange St.

LexisNexis Risk Data Management Inc.
c/o Registered Agent C T Corp. Sys.
289 S Culver St
Lawrenceville, GA, 30046

Nissan Motor Acceptance Company L.L.C.
c/o registered agent Corporation Service Company
80 State Street
Albany, NY 12207

Equifax Information Services L.L.C.
c/o registered agent Corporation Service Co.
80 State Street
Albany, NY 12207

Experian Information Solutions, Inc.
c/o registered agent CT Corp. Sys.
28 Liberty Street, Floor 42
New York, NY 10005

TransUnion Interactive, Inc.
c/o registered agent Corp.Serv. Co.
80 State Street
Albany, NY 12207

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is <u>Civil Practice Law & Rules Section 503(c)</u>, which <u>is the county designed by Plaintiff when Plaintiff does not reside in NY and Defendants do not have their principal office in NY</u>.

Dated: <u>June 18, 2024</u>

Paúl Camarena, Esq.
by: *Paúl Camarena*

Paúl Camarena
Paúl Camarena, Esq.,
540 Court St., No. 4015
Brooklyn, NY 11231          (312) 493-7494 / paulcamarena@paulcamarena.com
NY Atty No: 3991981

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 3 of 33 PageID #: 7

## IN THE SUPREME COURT
## OF THE STATE OF NEW YORK
## COUNTY OF KINGS

| | |
|---|---|
| *FERMIN GERVACIO-ROSALES*,<br>    Plaintiff, | )<br>)<br>) |
| *v.* | )<br>) |
| *ALLY FINANCIAL INC.,*<br>*CAPITAL ONE FINANCIAL CORPORATION,*<br>*LEXISNEXIS RISK DATA MANAGEMENT INC.,*<br>*NISSAN MOTOR ACCEPTANCE COMPANY L.L.C.,*<br>*SYNCHRONY FINANCIAL,*<br>*EQUIFAX INFORMATION SERVICES L.L.C.,*<br>*EXPERIAN INFORMATION SOLUTIONS, INC.,*<br>*and TRANSUNION INTERACTIVE, INC.,*<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Fermin Gervacio-Rosales, by his counsel Paúl Camarena, respectfully complains

as follows:

### Introduction.

1)      The United States Fair Credit Reporting Act and its progeny provide that, when a

consumer disputes information that a furnisher of credit information is reporting to a consumer

reporting agency, the furnisher must reasonably investigate that information and the consumer

reporting agency must reasonably re-investigate that same information.  In the instant case,

Plaintiff Mr. Gervacio-Rosales submitted multiple disputes of information reported by Defendant

Furnishers Ally, Capital One, LexisNexis, Nissan, and Synchrony.  However, the Defendant

Furnishers failed to reasonably investigate their own reported information, and the Defendant

Consumer Reporting Agencies Equifax, Experian, and TransUnion also failed to reasonably re-

investigate that same information.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 4 of 33 PageID #: 8

2)      The Defendant Furnishers' reporting about Mr. Gervacio-Rosales was inaccurate and the Defendant CRAs included that inaccurate information on their reports.  Nevertheless, regardless of whether any Defendant's reporting would have been inaccurate, each Defendant's failure to reasonably investigate or re-investigate was *per se* a violation of the U.S. Fair Credit Reporting Act.  *Spokeo v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1550 (2016) ("**A violation** of one of the FCRA's procedural requirements may result in no harm.  For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.") (emphasis added) (dismissing FCRA claim because the FCRA violation did not result in any harm or a case or controversy as required by Article III of the U.S. Constitution).  Moreover, "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute."  *Asarco v. Kadish*, 490 U.S. 605, 617 (1989).

### Constitutional and Statutory Jurisdiction.

3)      The Fair Credit Reporting Act, at 15 U.S.C. §§ 1681n and o, states that "[a]ny person who is negligent in failing to comply" or "who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer."  The F.C.R.A., at 15 U.S.C. § 1681p, further states that an "action to enforce any liability created under this subchapter may be brought in any appropriate United States district court … or in any other court of competent jurisdiction."

Case 1:24-cv-05239-DG-LKE Document 1-1 Filed 07/26/24 Page 5 of 33 PageID #: 9

4)	However, the instant complaint may not appropriately be brought in a United States district court because the complaint does not allege the particular type of injury required by Article III of the U.S. Constitution. *George v. Credit Corporation*, 22-5512 (E.D.N.Y. August 24, 2023) (holding that, "[b]ecause Plaintiff has not alleged a concrete injury, he lacks Article III standing to sue in federal court, [the United States district c]ourt lacks subject matter jurisdiction …and [the district court] must remand the case" back to a New York State Court) (denying Plaintiff's motion for attorney fees for litigating remand/removal only because "standing jurisprudence in this District and the Second Circuit [wa]s still evolving" at that time) (citations omitted).

5)	Nevertheless, the New York Constitution, Article VI, Section 7a. states that the "supreme court shall have general original jurisdiction in law and equity." Thus, this Honorable Court does have Constitutional and statutory jurisdiction over this action.

### General Personal Jurisdiction.

Authorities.

6)	N.Y. Civil Practice Law and Rules Section 301 states that a New York "court may exercise such jurisdiction over persons [ ] as might have been exercised heretofore." "CPLR § 301 has been construed to authorize New York courts to exercise jurisdiction over a foreign corporation if it is 'engaged in a continuous and systematic course of doing business' in New York to warrant a finding of its presence in this jurisdiction. The test for 'doing business' requires that 'the court ... be able to say from the facts that the corporation is present in the State not occasionally or casually, but with a fair measure of permanence and continuity.' In addition to the traditional *indicia* of 'doing business' in New York, such as the existence of **an office, bank account or** other property in New York, jurisdiction over a foreign corporation exists

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 6 of 33 PageID #: 10

where it **solicits business** in New York and engages in some other continuous activity." *Besler v. Spermon*, 2011 N.Y. Slip Op. 34132 (N.Y. Sup. Ct. 2011) (citing *Allojet PLC v. Vantage Assoc.*, 2005 WL 612848 S.D.N.Y. 2005 ("once solicitation is shown 'very little more is necessary to a conclusion of doing business'") (citation omitted)) (brackets omitted and emphasis added). "Personal jurisdiction over a non resident individual may also be acquired under CPLR § 301 ... even as to causes of action unrelated to the business done within the State." *Besler* (citation omitted).

Defendant Equifax.

7)    Defendant Equifax has "**an office**[1], **bank account**[2]" and "**solicits business** [all] in New York[3]." Thus, pursuant to CPLR § 301, this Court has general personal jurisdiction over Defendant Equifax "even as to causes of action unrelated to the business done within the State." *Besler*.

---

1    See, e.g, Kevin Dugan, *Equifax To Cut 33 Jobs From Long Island Office*, New York Post (November 19, 2018) ("The credit score giant will lay off [33] of the 51 people in its Garden City[, NY] office.").

2    2022 Equifax Annual Report, p. 102 (noting Equifax account with Bank of New York), available at https://d1io3yog0oux5.cloudfront.net/_d50557a271b97bad5988a339a676d159/equifax/db/2054/19364/annual_report/EFX013+Equifax+2022+Annual+Report+Web.pdf .

3    Equifax is one of the 3 largest credit reporting agencies in the United States and has files on more than 1/3 of the residents of New York state.  New York State Attorney General, Press Release, *Attorney General James Holds Equifax Accountable By Securing $600 Million Payment In Largest Data Breach Settlement In History* (July 22, 2019).  Hence, Equifax cannot seriously deny that it solicits business in New York state.  In addition to the "the traditional *indicia* of 'doing business' in New York," Equifax trades its corporate stock on the New York Stock Exchange.  NYSE: EFX.  *See also*, *Rivera v. Equifax*, 03-cv-4112 (E.D. Pa. April 1, 2004) ("as a national credit bureau that regularly conducts business in Pennsylvania, [Pennsylvania District Court was] satisfied that th[at] Court may [have] exercise[d] personal jurisdiction over Equifax [even though] Plaintiff [wa]s a resident of the Southern District of Florida"); *United States v. Sanchez*, 972 F.3d 156 (2d Cir. 2020), (holding that the United States Constitution Due Process Clause was not offended by a New York court's imposition of a sentence of imprisonment for 5 years on a Columbian national who had never previously been in the United States and who had committed his crime entirely in Columbia).

Defendant Experian.

8)      Defendant Experian also has an office[4] and solicits business in New York[5].  Thus, pursuant to CPLR § 301, this Court also has personal jurisdiction over Defendant Experian "even as to causes of action unrelated to the business done within the State."  *Besler*.

Defendant TransUnion.

9)      Defendant TransUnion similarly has "**an office[6], bank account[7]**" and "**solicits business**

[all] in New York[8]."  Thus, pursuant to CPLR § 301, this Court similarly has personal jurisdiction over Defendant TransUnion "even as to causes of action unrelated to the business done within the State."  *Besler*.

---

4    Experian publishes an Experian address in New York as "Experian 29 Broadway New York NY 10006" and "Fax: +1 (212) 863-4420 -3201."  Experian Data Quality website, available at https://www.edq.com/about-us/#new-york .

5    Experian's website boasts that "Experian provides business credit reports for businesses across New York."  Experian website, available at https://www.experian.com/small-business/new-york-business-credit .

6    TransUnion has at least 2 offices in New York, one at "100 Park Ave, 27th Floor, New York, NY" and one at "50 Main Street, Floors 6–8, White Plains, NY."  TransUnion website, Global Offices page, available at https://www.transunion.com/about-us/global-locations/north-america .

7    2022 TransUnion Annual Report, pp. 147 – 148 (noting TransUnion accounts with Deutsche Bank AG New York Branch), available at https://investors.transunion.com/~/media/Files/T/Transunion-IR-V2/annual-reports/2022/2022-annual-report.pdf .

8    TransUnion's website notes that "TransUnion [Will] Present at Upcoming Investor Conferences in New York."  TransUnion website, Investor Relations page, available at https://newsroom.transunion.com/transunion-to-present-at-upcoming-investor-conferences-in-new-york-and-chicago/ .  In addition to the "the traditional *indicia* of 'doing business' in New York," TransUnion trades its corporate stock on the New York Stock Exchange.  NYSE: TRU.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 8 of 33 PageID #: 12

Defendant Ally.

10)     Defendant Ally has "**an office**[9]**, bank account**[10]" and "**solicits business** [all] in New York[11]."  Thus, pursuant to CPLR § 301, this Court has personal jurisdiction over Defendant Ally even as to causes of action unrelated to the business done within the State.  *Besler*.

Defendant Capital One.

11)     Defendant Capital One also has "**an office** [and] **solicits business** in New York[12]."  Thus, pursuant to CPLR § 301 and its progeny, this Court also has personal jurisdiction over Defendant Capital One even as to causes of action unrelated to the business done within the State.

Defendant LexisNexis Risk.

12)     Defendant LexisNexis Risk is headquartered in Georgia, but has offices throughout New York and solicits business in New York[13].  Thus, pursuant to CPLR § 301 and its progeny, this Court has personal jurisdiction over Defendant LexisNexis Risk even as to causes of action unrelated to the business done within the State.

---

9   2023 Ally Annual Report, at p. 38 (noting that "[t]he primary office for [Ally's] Corporate Finance operations is located in New York, New York, where [Ally] lease[s] approximately 55,000 square feet of office space), available at https://www.ally.com/content/dam/pdf/investor-relations/2023-10k.pdf .

10  2023 Ally Annual Report, at pp. 215 – 216 (noting Ally accounts with Bank of New York).  Id.

11  2023 Annual Report, pp. 81, 83, 164 (noting Ally's large New York customer base).  Id.  In addition to the "the traditional *indicia* of 'doing business' in New York," Ally trades its corporate stock on the New York Stock Exchange.  NYSE: ALLY.

12  Capital One's website lists over one dozen retail bank locations in Kings County alone, https://locations.capitalone.com/?map=40.678178,-73.944158,12z&locTypes=branch&place=Brooklyn,%20NY,%20USA&servicesFilter= .  In addition to the "the traditional *indicia* of 'doing business' in New York," Capital One trades its corporate stock on the New York Stock Exchange.  NYSE: COF.

13  LexisNexis Risk publishes LexisNexis Risk addresses in at least 3 New York counties/boroughs. LexisNexis Risk website, available at https://risk.lexisnexis.com/corporate/office-locations#americas .

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 9 of 33 PageID #: 13

<u>Defendant Nissan.</u>

13)     Defendant Nissan similarly has "**<u>an office</u>** [and] **<u>solicits business</u>** in New York[14]." Thus, pursuant to CPLR § 301 and its progeny, this Court similarly has personal jurisdiction over Defendant Nissan.

<u>Defendant Synchrony.</u>

14)     Defendant Synchrony has "**<u>an office</u>**[15] [and] **<u>solicits business</u>** in New York[16]." Thus, pursuant to CPLR § 301 and its progeny, this Court has personal jurisdiction over Defendant Synchrony.

---

14  Nissan's website lists several sales locations throughout New York, website at https://www.nissanusa.com/dealer-locator.html?dcp=psn.58700008354921771&ds_rl=1254058&gad_source=1&gclid=Cj0KCQjw0ruyBhDuARIsANSZ3woWpye28jfS-gcfEZIZu1zP0apEbiAUeDF_EB4HGrUtQovn2EFOyMIaApvVEALw_wcB&gclsrc=aw.ds . In addition to the "the traditional *indicia* of 'doing business' in New York," Nissan trades its corporate stock on the New York based OTC Markets Group. OTCMKTS: NSANY.

15  Synchrony's website lists dozens of Synchrony New York employment openings, https://www.synchronycareers.com/job-search-results/?location=New%20York%2C%20NY%2C%20USA&latitude=40.7127753&longitude=-74.0059728&radius=25&pg=2 .

16  Synchrony's website lists hundreds of Synchrony Partner New York locations, https://www.synchrony.com/marketplace/locations . In addition to the "the traditional *indicia* of 'doing business' in New York," Synchrony trades its corporate stock on the New York Stock Exchange. NYSE: SYF.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 10 of 33 PageID #: 14

## **Venue.**

15)     CPLR § 503(c) states that "a foreign corporation authorized to transact business in the state, shall be deemed a resident of the county in which its principal office is located;" and CPLR § 503(a) states that "the place of trial shall be … if none of the parties then reside in the state, in any county designated by the plaintiff."  In the instant case, the plaintiff does not reside in the state and, thus, as none of the defendants has its principal office located in the state either, none of the parties reside in the state.  Because Kings County is designated by the plaintiff, this Court is the proper venue for this action.

## **Parties.**

16)     Plaintiff Mr. Gervacio-Rosales is a natural person and, thus, is a "consumer" as that term is defined in the F.C.R.A., at 15 U.S.C. § 1681a(c).

17)     Defendant Ally Financial Inc. is a corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity "), and is required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

18)     Defendant Capital One Financial Corporation is a corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity "), and is required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

19)     Defendant LexisNexis Risk Data Management Inc. is a corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity "), and is required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

20)     Defendant Nissan Motor Acceptance Company L.L.C. is a limited liability company and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity "), and is required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

21)     Defendant Synchrony Financial is a corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity "), and is required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

22)     Defendant Equifax regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

23)     Defendant Experian regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

24)     Defendant TransUnion regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 12 of 33 PageID #: 16

## **Factual Allegations.**

### Defendant Furnishers Ally, Capital 1 & Synchrony and Defendant CRAs Experian & TransUnion

25)     The U.S. Bankruptcy Code provides a mechanism for debtors to have many of their debts discharged.  However, the Bankruptcy Code, at 11 U.S.C. § 523 (a)(3), specifically exempts from discharge any debt that the debtor "neither list[s] nor schedule[s]" in the debtor's bankruptcy filings.  Within the Seventh Circuit (where Mr. Gervacio-Rosales resides), "a debtor must reopen his no asset bankruptcy and amend his bankruptcy schedules to discharge a previously unscheduled debt. *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 968 (7th Cir. 1996)." *Laura v. Experian*, 20 cv 1573 (N.D.Ill. March 27, 2023).

26)     Between 2015 and 2021, Mr. Gervacio-Rosales incurred debts to Ally, Capital One, and Synchrony.  In 2023, Mr. Gervacio-Rosales filed a No Asset Bankruptcy Petition for Relief. However, Mr. Gervacio-Rosales did not chose to list or schedule any of his debts to Ally, Capital One, or Synchrony in his bankruptcy filings. *In Re Gervacio*, 23 B 3181 (N.Bankr.Ill.).

27)     Nevertheless, Ally, Capital One, and Synchrony inaccurately reported to Experian and TransUnion that these debts were "discharged through Bankruptcy" or were "included in Bankruptcy."

28)     Because Mr. Gervacio-Rosales "neither listed nor scheduled" his debts to Ally, Capital One, or Synchrony and because he did not "reopen his no asset bankruptcy and amend his bankruptcy schedules to discharge a previously unscheduled debt," *supra*, Mr. Gervacio-Rosales submitted multiple disputes of Ally, Capital One, and Synchrony's inaccurate reporting to Experian and TransUnion.

29)     In Mr. Gervacio-Rosales multiple disputes, he referenced his Bankruptcy case by specifically citing to it, *In Re Gervacio*, 23 B 3181 (N.Bankr.Ill.), he included his relevant Bankruptcy filings and a Bankruptcy Court docket report, and he specifically explained that:

- his "Chapter 7 Bankruptcy was a no asset bankruptcy;"

- these "account[s] w[ere] not scheduled on BK Form 106d (Schedule d) or Form 106e/f (Schedule e/f);"

-  " a debtor must reopen his no asset bankruptcy and amend his bankruptcy Schedules to discharge a previously unscheduled debt, and [Mr. Gervacio-Rosales] has not reopened his bankruptcy;"

- and, thus, these "account[s] w[ere] not discharged through Chapter 7 Bankruptcy."

30)     Mr. Gervacio-Rosales' disputes also listed his telephone number and email address and requested Ally, Capital One, Synchrony, Experian, and TransUnion to contact him to investigate his disputes.

31)     Upon information and belief, Experian and TransUnion forwarded Mr. Gervacio-Rosales' multiple disputes to Ally, Capital One, and Synchrony, and Ally, Capital One, and Synchrony received Mr. Gervacio-Rosales' multiple disputes.

32)     Although "an FCRA claim can be actionable when a defendant does not apply readily verifiable and straightforward law to facts," *Lamando v. Rocket Mortgage*, 23 cv 147 (N.D.N.Y. January 24, 2024), Defendants Ally, Capital One, and Synchrony never contacted Mr. Gervacio-Rosales to investigate his disputes; Defendants failed to reasonably investigate their own reported information about Mr. Geravacio-Rosales; and Defendants continue to report that inaccurate information to Defendants Experian and TransUnion.

33)     Defendants Experian and TransUnion also never contacted Mr. Gervacio-Rosales to investigate his disputes; Defendants Experian and TransUnion failed to reasonably re-investigate Defendants Ally, Capital One, and Synchrony's inaccurately reported information about Mr.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 14 of 33 PageID #: 18

Gervacio Rosales; and Defendants Experian and TransUnion continue to include Defendant Ally, Capital One, and Synchrony's inaccurate information about Mr. Gervacio-Rosales in Defendant Experian and Defendant TransUnion's files.

34)     Defendants Ally, Capital One, and Synchrony additionally failed to comply with their statutory obligations by failing to report to Defendants Experian and TransUnion that Defendant Ally, Capital One, and Synchrony's reported information about Mr. Gervacio-Rosales is disputed by him, even though Mr. Gervacio-Rosales' disputes specifically protested that the Defendants "are not even notating the dispute."

35)     Defendant Ally, Capital One, and Synchrony's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or his debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery*, 889 F.3d 337, 349 (7th Cir. 2018).

36)     Moreover, Defendants Experian and TransUnion further failed to comply with their statutory obligations by failing to note that Defendants Ally, Capital One, and Synchrony's reported information about Mr. Gervacio-Rosales is disputed by him. *See Wheeler v. Equifax and TransUnion*, 17 cv 3328 (Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA. See 15 U.S.C. § 1681i. Accordingly, [the consumer] sufficiently alleges that TransUnion performed an

unreasonable reinvestigation" when the consumer notified TransUnion that he was disputing a debt, the furnisher did not respond, and TransUnion failed to change the dispute status.).

<u>Defendant Furnisher LexisNexis and Defendant Consumer Reporting Agency TransUnion.</u>

37)     Bankruptcy debtors must pay their Bankruptcy attorney fees, Bankruptcy Court filing fees, and for Bankruptcy Court required courses before they receive a discharge.  In March 2023, Mr. Gervacio-Rosales filed a Bankruptcy Petition for Relief and paid his attorney fees, the Court filing fees, and for Court required courses.  (*In re Gervacio-Rosales,* 23 B 3181 (N.Bankr.Ill.).) Mr. Gervacio-Rosales was not required to make any further payments, and he did not make any further payments, with respect to his bankruptcy.  On June 12, 2023, Mr. Gervacio-Rosales received a discharge from the Bankruptcy Court.  *Id*. ECF No. 18.

38)     LexisNexis reported Mr. Gervacio-Rosales' filing of a Bankruptcy Petition to TransUnion.  However, LexisNexis inaccurately reported Mr. Gervacio-Rosales' Bankruptcy with a "Date Paid [of] 06/12/2013" and, thus, LexisNexis conveyed that Mr. Gervacio-Rosales' Bankruptcy process was not as far along as it actually was.  LexisNexis' reporting was parroted in Defendant TransUnion's report on Mr. Gervacio-Rosales.

39)     "Even a seemingly minor inaccuracy in a credit report can lead to a consumer being denied a loan, housing, or job."  Seth Frotman, *Credit reporting companies and furnishers have obligations to assure*, Consumer Financial Protection Bureau (May 6, 2022), available at https://www.consumerfinance.gov/about-us/blog/credit-reporting-companies-and-furnishers-have-obligations-to-assure-accuracy-in-consumer-reports/ .  Thus, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure <u>maximum possible accuracy</u>." 15 U.S. Code § 1681e(b) (emphasis added).  Hence, Mr. Gervacio-Rosales submitted multiple disputes of LexisNexis' reporting to TransUnion.

40)    In Mr. Gervacio-Rosales' multiple disputes, he referenced his Bankruptcy case by specifically citing to it, *In Re Gervacio*, 23 B 3181 (N.Bankr.Ill.), he included a Bankruptcy Court docket report, and he specifically explained that LexisNexis' "reported date paid of 06/12/2023 is inaccurate because no one made any payment in this case on this date, as the only payments in this case were for attorney fees, filing fees, & course fees, and those payments were made before 06/12/2023." Mr. Gervacio-Rosales' disputes additionally listed his telephone number and email address and requested LexisNexis and TransUnion to contact him to investigate his dispute.

41)    Upon information and belief, TransUnion forwarded Mr. Gervacio-Rosales' multiple disputes to LexisNexis, and LexisNexis received Mr. Gervacio-Rosales' multiple disputes.

42)    However, Defendant LexisNexis never contacted Mr. Gervacio-Rosales to investigate his disputes; Defendant LexisNexis failed to reasonably investigate its own reported information about Mr. Geravacio-Rosales; and Defendant LexisNexis continues to report that inaccurate information to Defendant TransUnion.

43)    Defendant TransUnion also never contacted Mr. Gervacio-Rosales to investigate his disputes; Defendant TransUnion failed to reasonably re-investigate Defendant LexisNexis' inaccurately reported information about Mr. Gervacio Rosales; and Defendant TransUnion continues to include Defendant LexisNexis' inaccurate information about Mr. Gervacio-Rosales in Defendant TransUnion's files.

44)    Defendant LexisNexis additionally failed to comply with its statutory obligations by failing to report to Defendant TransUnion that Defendant LexisNexis' reported information about Mr. Gervacio-Rosales is disputed by him.

45)     Defendant LexisNexis' "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or his debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery*, 889 F.3d 337, 349 (7th Cir. 2018).

46)     Moreover, Defendant TransUnion further failed to comply with its statutory obligations by failing to note that Defendant LexisNexis' reported information about Mr. Gervacio-Rosales is disputed by him. *See Wheeler v. Equifax and TransUnion*, 17 cv 3328 (Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA. See 15 U.S.C. § 1681i. Accordingly, [the consumer] sufficiently alleges that TransUnion performed an unreasonable reinvestigation" when the consumer notified TransUnion that he was disputing a debt, the furnisher did not respond, and TransUnion failed to change the dispute status.).

<u>Defendant Furnisher Nissan and Defendant Consumer Reporting Agency Equifax.</u>

47)     The Consumer Data Industry Association's "Metro 2 format" standardizes Furnishers'

and Consumer Reporting Agencies' reporting of credit information, and "inaccurate reporting

under Metro 2 standards may be misleading and lead to adverse credit decisions." *Nissou-

Rabban v. Capital One*, 15 cv 1675 (S.D. Cal. June 6, 2016).

48)     Metro 2 standards require furnishers and CRAs to report tradelines using Metro 2 Code

"B" / "Included in Bankruptcy" (and not Code "CO" / "Charge Off") when the debt is discharged

by a Bankruptcy Court.

49)     In 2018, Mr. Gervacio-Rosales incurred a debt to Nissan.  However, in 2023, Mr.

Gervacio-Rosales filed a Bankruptcy Petition for Relief, he listed his debt to Nissan in his filing

and, in June 2023, the Bankruptcy Court discharged his debt to Nissan.  *In Re Gervacio*, 23 B

3181 (N.Bankr.Ill.).

50)     Nevertheless, Nissan never reported Mr. Gervacio-Rosales' debt as "Included in

Bankruptcy" to Equifax.  Instead, Nissan reported this debt as a "Charge Off" for the months of

July, August, September, and October 2023, and Nissan's reporting was parroted in Equifax's

consumer report on Mr. Gervacio-Rosales.

51)     "Even a seemingly minor inaccuracy in a credit report can lead to a consumer being

denied a loan, housing, or job."  Seth Frotman, *Credit reporting companies and furnishers have

obligations to assure*, Consumer Financial Protection Bureau (May 6, 2022), available at

https://www.consumerfinance.gov/about-us/blog/credit-reporting-companies-and-furnishers-

have-obligations-to-assure-accuracy-in-consumer-reports/ .  Thus, "[w]henever a consumer

reporting agency prepares a consumer report it shall follow reasonable procedures to assure

maximum possible accuracy." 15 U.S. Code § 1681e(b) (emphasis added).  Hence, Mr.

Gervacio-Rosales submitted multiple disputes of Nissan's reporting to Equifax.

52)     In Mr. Gervacio-Rosales' multiple disputes, he referenced his bankruptcy case by

specifically citing to it, *In Re Gervacio*, 23 B 3181 (N.Bankr.Ill.); he specifically protested that

Nissan and Equifax's "reporting [the] payment history for 2023 july, august, september, and

october as [a] charge off is inaccurate because, in 2023 june, a court discharged this debt [and

therefore the] payment history for 2023 july, august, september, and october is actually 'b

included in bankruptcy;'" and he included the Bankruptcy Court's order discharging this debt.

Mr. Gervacio-Rosales' disputes also listed his telephone number and email address and requested

Nissan and Equifax to contact him to investigate his disputes.

53)     Upon information and belief, Equifax forwarded Mr. Gervacio-Rosales' multiple disputes

to Nissan, and Nissan received Mr. Gervacio-Rosales' multiple disputes.

54)     However, Defendant Nissan never contacted Mr. Gervacio-Rosales to investigate his

disputes; Defendant Nissan failed to reasonably investigate its own reported information about

Mr. Geravacio-Rosales; and Defendant Nissan continues to report that inaccurate information to

Defendant Equifax.

55)     Defendant Equifax also never contacted Mr. Gervacio-Rosales to investigate his disputes;

Defendant Equifax failed to reasonably re-investigate Defendant Nissan's inaccurately reported

information about Mr. Gervacio Rosales; and Defendant Equifax continues to include Defendant

Nissan's inaccurate information about Mr. Gervacio-Rosales in Defendant Equifax's files.

Case 1:24-cv-05239-DG-LKE    Document 1-1    Filed 07/26/24    Page 20 of 33 PageID #: 24

### Causes of Action.

Count One – As to Defendant Ally's Failure to Reasonably Investigate.

56)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part,

that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information

provided by a person to a consumer reporting agency, the person shall [ ] conduct an

investigation with respect to the disputed information." "[C]ourts have consistently concluded

that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient

Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other

grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a

[furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the

disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is

reasonable is a factual inquiry.").

57)     Defendant Ally negligently or willfully violated Subsection 1681s-2(b)(1)(A) by

negligently or willfully failing to conduct reasonable investigations with respect to information

about Mr. Gervacio-Rosales that Defendant Ally itself is reporting to a consumer reporting

agency.

Count Two – As to Defendant Ally's Failure to Note Mr. Gervacio-Rosales' Dispute.

58)     The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide

Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information

furnished by any person to any consumer reporting agency is disputed [ ], the person may not

furnish the information to any consumer reporting agency without notice that such information is

disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute

with regard to the [ ] accuracy of any information provided by a person to a consumer reporting

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 21 of 33 PageID #: 25

agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report

those results."  Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at

Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed

information."  *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009).  Further,

"after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt

without any notation of the dispute presents a cognizable claim under § 1681s-2(b)."  *Id*. (citing

*Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

59)    Defendant Ally negligently or willfully violated Subsection 1681s-2(b)(1)(D) by

negligently or willfully reporting its information about Mr. Gervacio-Rosales to a consumer

reporting agency without notating that Mr. Gervacio-Rosales is disputing that information.

<u>Count Three – As to Defendant Capital One's Failure to Reasonably Investigate.</u>

60)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part,

that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information

provided by a person to a consumer reporting agency, the person shall [ ] conduct an

investigation with respect to the disputed information."  "[C]ourts have consistently concluded

that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient

Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other

grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a

[furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the

disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is

reasonable is a factual inquiry.").

Case 1:24-cv-05239-DG-LKE Document 1-1 Filed 07/26/24 Page 22 of 33 PageID #: 26

61)     Defendant Capital One negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Mr. Gervacio-Rosales that Defendant Capital One itself is reporting to a consumer reporting agency.

<u>Count Four – As to Defendant Capital One's Failure to Note Mr. Gervacio-Rosales' Dispute.</u>

62)     The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed."  Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results."  Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information."  *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009).  Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)."  *Id.* (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

63)     Defendant Capital One negligently or willfully violated Subsection 1681s-2(b)(1)(D) by negligently or willfully reporting its information about Mr. Gervacio-Rosales to a consumer reporting agency without notating that Mr. Gervacio-Rosales is disputing that information.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 23 of 33 PageID #: 27

<u>Count Five – As to Defendant LexisNexis' Failure to Reasonably Investigate.</u>

64)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

65)     Defendant LexisNexis negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Mr. Gervacio-Rosales that Defendant LexisNexis itself is reporting to a consumer reporting agency.

<u>Count Six – As to Defendant LexisNexis' Failure to Note Mr. Gervacio-Rosales' Dispute.</u>

66)     The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed."  Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report

those results."  Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at

Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed

information."  *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009).  Further,

"after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt

without any notation of the dispute presents a cognizable claim under § 1681s-2(b)."  *Id*. (citing

*Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

67)     Defendant LexisNexis negligently or willfully violated Subsection 1681s-2(b)(1)(D) by

negligently or willfully reporting its information about Mr. Gervacio-Rosales to a consumer

reporting agency without notating that Mr. Gervacio-Rosales is disputing that information.

<u>Count Seven – As to Defendant Nissan's Failure to Reasonably Investigate.</u>

68)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part,

that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information

provided by a person to a consumer reporting agency, the person shall [ ] conduct an

investigation with respect to the disputed information."  "[C]ourts have consistently concluded

that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient

Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other

grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a

[furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the

disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is

reasonable is a factual inquiry.").

69)     Defendant Nissan negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Mr. Gervacio-Rosales that Defendant Nissan itself is reporting to a consumer reporting agency.

<u>Count Eight – As to Defendant Synchrony's Failure to Reasonably Investigate.</u>

70)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

71)     Defendant Synchrony negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Mr. Gervacio-Rosales that Defendant Synchrony itself is reporting to a consumer reporting agency.

<u>Count Nine – As to Defendant Synchrony's Failure to Note Mr. Gervacio-Rosales' Dispute.</u>

72)     The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not

Case 1:24-cv-05239-DG-LKE Document 1-1 Filed 07/26/24 Page 26 of 33 PageID #: 30

furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results." Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009). Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id*. (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

73)    Defendant Synchrony negligently or willfully violated Subsection 1681s-2(b)(1)(D) by negligently or willfully reporting its information about Mr. Gervacio-Rosales to a consumer reporting agency without notating that Mr. Gervacio-Rosales is disputing that information.

<u>Count Ten – As to Defendant Equifax's Failure to Reasonably Reinvestigate.</u>

74)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

75)    Defendant Equifax negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into its own files' information regarding Mr. Gervacio-Rosales that is being reported by Defendant Nissan.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 27 of 33 PageID #: 31

<u>Count Eleven – As to Defendant Experian's Failure to Reasonably Reinvestigate.</u>

76)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

77)     Defendant Experian negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct a reasonable reinvestigation into its own files' information regarding Mr. Gervacio-Rosales that is being reported by Defendants Ally, Capital One, and Synchrony.

<u>Count Twelve – As to Defendant TransUnion's Failure to Reasonably Reinvestigate.</u>

78)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

79)     Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into its own files' information regarding Mr. Gervacio-Rosales that is being reported by y Defendants Ally, Capital One, LexisNexis, and Synchrony.

Case 1:24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 28 of 33 PageID #: 32

## Prayer for Relief.

WHEREFORE, Plaintiff Fermin Gervacio-Rosales respectfully prays that this Honorable

Court will hold a trial by jury and that this Court will enter judgment in his favor (and against the

Defendants) for his statutory damages, his reasonable attorney's fees and costs, and for punitive

damages.

Respectfully submitted,
Plaintiff Fermin Gervacio-Rosales' Counsel
Paúl Camarena
*/s/ Paúl Camarena*
Paúl Camarena, Esq.
540 Court St., No. 4015
Brooklyn, NY 11231
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty No: 3991981

Case 1.24-cv-05239-DG-LKE   Document 1-1   Filed 07/26/24   Page 29 of 33 PageID #: 33

HOLLAND & KNIGHT LLP
Jonathan Marmo
1650 Market Street, Suite 3300
Philadelphia, PA 19103
Tel.: (215) 252-9600
Mobile: (516) 395-1230
jonathan.marmo@hklaw.com

*Attorneys for Defendant, Nissan Motor Acceptance Company, L.L.C.*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------- X

FERMIN GERVACIO-ROSALES,      :

     :    Index No.: 516839/2024

      Plaintiff,      :

     :    **NOTICE OF APPEARANCE**

v.      :

     :

NISSAN MOTOR ACCEPTANCE COMPANY      :
L.L.C., ET AL.,      :

     X

      Defendants.

-------------------------------------------------------------

     **PLEASE TAKE NOTICE** that Jonathan Marmo of Holland & Knight, LLP, hereby

appears as counsel in this action on behalf of the Defendant, Nissan Motor Acceptance Company,

L.L.C ("Nissan") and said Defendant demands that all papers in this action be served upon its

attorneys at the address set forth below.

[SIGNATURE ON FOLLOWING PAGE]

Dated:  July 3, 2024.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: _____

Jonathan Marmo, Esq.
(NYS Bar No. 4239323)
1650 Market Street
Suite 3300
Philadelphia, PA 19103
Phone 215.252.9600
Mobile 516.395.1230
jonathan.marmo@hklaw.com

*Attorneys for Defendant Nissan Motor*
*Acceptance Company L.L.C.*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2024, I filed the foregoing Notice of Appearance using the

Court's ECF system, which causes a copy to be emailed to all counsel of record.

_____

Jonathan Marmo

| | |
|---|---|
| Short Caption: | **Fermin Gervacio-Rosales v. Ally Financial Inc. et al** |
| Case Type: | **Torts - Other (Credit Reporting)** |
| Case Status: | **Pre-RJI** |
| eFiling Status: | **Partial Participation Recorded** |

**Full Caption**
Fermin Gervacio-Rosales v. Ally Financial Inc., Capital One Financial Corporation, Synchrony Financial, Lexisnexis Risk Data Management Inc., Nissan Motor Acceptance Company L.L.C., Equifax Information Services L.L.C., Experian Information Solutions, Inc., Transunion Interactive, Inc.

**Plaintiffs/Petitioners**

| Name | Represented By |
|---|---|
| Fermin Gervacio-rosales | CAMARENA, PAUL on 06/18/2024<br>PAUL CAMARENA |

**Defendants/Respondents**

| Name | Represented By |
|---|---|
| Ally Financial Inc. | *none recorded* |
| Capital One Financial Corporation | *none recorded* |
| Synchrony Financial | *none recorded* |
| LexisNexis Risk Data Management Inc. | *none recorded* |
| Nissan Motor Acceptance Company L.L.C. | MARMO, JONATHAN MICHAEL on 07/03/2024<br>Holland & Knight LLP |
| Equifax Information Services L.L.C. | *none recorded* |
| Experian Information Solutions, Inc. | *none recorded* |
| TransUnion Interactive, Inc. | *none recorded* |

NYSCEF

Kings County Supreme Court

**Document List**

**Index #   516839/2024**

Created on:07/24/2024 05:10 PM

Case Caption:   **Fermin Gervacio-Rosales v. Ally Financial Inc. et al**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT | Processed | 06/18/2024 | Camarena, P. |
| 2 | NOTICE OF APPEARANCE (PRE RJI) | Processed | 07/03/2024 | Marmo, J. |